IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 24, 2024

**BILLY TAYLOR, IV v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 121633   G. Scott Green, Judge**

———————————

**No. E2023-00636-CCA-R3-PC**

———————————

The Petitioner, Billy Taylor, IV, appeals the Knox County Criminal Court's denial of his petition for post-conviction relief challenging his guilty-pleaded convictions for two counts of unlawful possession of a firearm by a convicted felon and one count of possession of methamphetamine over one-half gram with the intent to sell. The Petitioner argues that the post-conviction court erred by finding that he entered his guilty pleas knowingly and voluntarily. Specifically, the Petitioner alleges that: (1) trial counsel was ineffective by failing to explain that the plea agreement did not guarantee the Petitioner probation and treatment at a substance abuse program and (2) he was under the influence of narcotics at the time he pleaded guilty. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TOM GREENHOLTZ, JJ., joined.

J. Liddell Kirk, Madisonville, Tennessee, for the appellant, Billy Taylor, IV.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Charme P. Allen, District Attorney General; and Christopher Scruggs, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.      FACTUAL AND PROCEDURAL HISTORY**

## A. Guilty Plea Proceedings

On February 10, 2022, the Petitioner pleaded guilty to a criminal information as a Range I offender to two counts of unlawful possession of a firearm by a convicted felon, Class E felonies, and to one count of possession of methamphetamine over one-half gram with the intent to sell, a Class B felony. *See* Tenn. Code Ann. §§ 39-17-417(a)(4), (c)(1), -1307(c)(1), (2). Pursuant to the guilty plea agreement, the Petitioner received a two-year sentence for each firearm offense and an eight-year sentence for his methamphetamine offense. The agreement provided that the methamphetamine offense would run consecutively to one of the firearm offenses and concurrently with the other, for an effective ten-year sentence.

The facts underlying the Petitioner's guilty pleas, as provided by the State at the guilty plea submission hearing, were as follows:

> [O]n Friday, June 4th, 2021, at 3:05 in the morning at . . . North Peters Road[,] officers observed a silver Infiniti run the red light there at Cedar Bluff and North Peters.
>
> Officers attempted to catch up with the vehicle. It turned into the Microtel there at North Peters. The vehicle was driving quickly and ran over several curbs getting to the back parking lot of that location. It came to a quick stop and the driver looked at the officers and fled. The driver was identified there on the scene as the [Petitioner] . . . .
>
> There was a passenger in the vehicle . . . . She stated that the [Petitioner] had come and asked her for a ride. The [Petitioner] saw the officers trying to catch up with the car and . . . the [Petitioner] told the passenger that he wasn't going to prison[,] and [the passenger] stated that when [the Petitioner] ran from the vehicle[,] he threw a gun onto the floor of the vehicle. Officers recovered a silver 9mm handgun in the front floorboards of that vehicle. NCIC revealed that the [Petitioner's] license was revoked for failure to satisfy. And a records check did reveal the prior felonies.
>
> And then on December 7th, 2021, officers responded to a theft at . . . Walbrook Drive. This was about five in the evening. The complainant there stated that the [Petitioner] . . . had made a fraudulent return. Once making that return, he had exited the store. Officers attempted to stop the

[Petitioner], at which point he fled. There was a foot pursuit there at the location. The [Petitioner] did shed his jacket in a parking lot. The officers eventually were able to get the [Petitioner] into custody and they located a firearm in the pocket of the jacket that . . . the [Petitioner] had taken off in the parking lot.

They were also advised by the store there that there was evidence in the parking lot that the [Petitioner] had [thrown] while being pursued. Officers located two phones and approximately four grams of methamphetamine and four grams of heroin. This did occur in Knox County.

Trial counsel stated that no additional facts needed to be added to the factual basis.

The trial court recited the guilty plea agreement and noted that the Petitioner had received a "significant break" by not being charged with employing a firearm during the commission of a dangerous felony, which carried a "mandatory 100 percent stack[ed]" prison sentence.

The trial court further announced that the guilty plea agreement's terms provided that the Petitioner would request probation in each count. It stated that there was no agreement as to how the Petitioner would serve his sentence, that the trial court would determine the manner and method of service, and that the Petitioner could be on probation for the entirety, part, or none of his ten-year aggregate sentence. The Petitioner affirmed under oath his understanding. The Petitioner then acknowledged he had reviewed the Waiver of Trial by Jury and Request for Acceptance of Plea of Guilty form with trial counsel, understood it, and affirmed it was his signature on the form. The Petitioner informed the trial court that he was on prescribed medication but that it did not affect his ability to understand the proceedings. He further informed the court that he was twenty-seven years old, had a twelfth-grade education, had a GED, and could read and write without difficulty.

The Petitioner acknowledged that he was "freely and voluntarily" waiving his rights to a jury trial and to appeal any convictions. He affirmed his understanding that he had the right to counsel at all trial proceedings and that he was waiving the rights to cross-examine the State's witnesses presented against him at trial, to present witnesses on his own behalf, and to not be forced to testify against himself. The Petitioner affirmed that he was satisfied with trial counsel's representation, that he was not forced to plead guilty, and that he had not been promised anything outside the terms of the guilty plea agreement in exchange for his plea. The trial court accepted the Petitioner's guilty pleas, finding that the Petitioner

had entered into them "freely and voluntarily." Per trial counsel's request, the trial court ordered a "Samantha Monday referral"[1] and a Community Alternatives to Prison Program referral in addition to the presentence report.

A sentencing hearing was held on March 31, 2022. The State entered as an exhibit the presentence report. The Petitioner addressed the court saying he was not the same person who committed these offenses. He stated that he had twin girls and that he only wanted to take care of his family. The trial court commented on the "frustrating" circumstances in the Petitioner's case, stating that the Petitioner's twin girls were eight years old and that the Petitioner committed these offenses within the past year. It further stated the Petitioner had "dodged" prosecution under Tennessee Code Annotated section 39-17-1324. It noted the Petitioner's "bad" criminal history, stating the Petitioner had four prior felony convictions and nine prior misdemeanor convictions. The trial court denied the Petitioner probation and ordered the Petitioner to serve his agreed-to sentence in the Department of Correction.

## B. Post-Conviction Proceedings

On June 1, 2022, the Petitioner filed an untimely pro se motion to withdraw his guilty pleas. Based on the allegations contained in the motion, the post-conviction court treated it as a timely post-conviction petition and appointed counsel. On February 28, 2023, an amended petition for post-conviction relief was filed alleging that the Petitioner had received the ineffective assistance of trial counsel. Specifically, the Petitioner alleged that: (1) he was "confused" by trial counsel's explanation of the terms of the sentence and believed the total length of his sentence would be eight years and (2) trial counsel led the Petitioner to believe he would likely receive probation. The Petitioner further alleged that his "mental and physiological condition" when he entered the guilty pleas led to his confusion.

At the post-conviction hearing on March 9, 2023, the Petitioner testified that trial counsel never reviewed with him the facts of his case or the charged offenses. He stated he could not remember how many times he met with trial counsel before pleading guilty. He said trial counsel had coerced him into waiving his preliminary hearing in general sessions court and had instructed him to sign documents with conflicting information. When asked how trial counsel had coerced him, the Petitioner responded, "I don't know."

---

[1] Although not explicitly set forth in the record, it appears from context that Ms. Monday assists the court below in arranging treatment placements for incarcerated defendants. *See State v. Hill*, No. E2018-00619-CCA-R3-CD, 2019 WL 245261, at *1 (Tenn. Crim. App. Jan. 17, 2019) (referring to Samantha Monday as "a case manager with the Knox County Jail").

The Petitioner stated he did not know the guilty plea agreement was for a ten-year sentence. He believed he would receive probation and be admitted to a substance abuse treatment program. He stated he and trial counsel never discussed how much time he would serve if he did not receive probation. If he had known the trial court could deny his probation application, he would have proceeded to trial. He said that he did not even understand that he was pleading guilty. The Petitioner then accused trial counsel of giving him drugs multiple times while the Petitioner was in custody. The Petitioner said that trial counsel had admitted in court that he knew the Petitioner "from the streets."

The Petitioner testified that he was under the influence of narcotics most times he appeared in court and that, during the guilty plea submission hearing, he was under the influence of oxycodone. He stated that it affected his ability to understand the proceedings and that he did not remember the trial court's asking if he wanted to plead guilty. He did recall informing the trial court that he was on prescribed medication and that it did not affect his ability to understand. However, because he was charged with a narcotics offense, he was afraid admitting this would prevent him from getting substance abuse treatment. The Petitioner said that he failed a drug screen later that day and that officers discovered the Petitioner had drugs in his possession.

The Petitioner acknowledged having been previously charged for disorderly conduct in Las Vegas and charged for additional criminal offenses in other Tennessee counties, including attempted burglary. He stated that he had previously pleaded guilty to criminal offenses and had been questioned by a trial court over his rights. He stated, however, that his previous attorneys had helped him through this process; otherwise he would not have known what he was doing. He stated that trial counsel did not help him through this process. He said that he could not read well, did not graduate high school, and had been in "special education."

Trial counsel testified that he had been practicing law since 2006 and had experience with people suffering from mental health and substance abuse issues. He stated that he and the Petitioner discussed the plea offer over several days. Trial counsel reviewed the charges with the Petitioner and the possible punishments. Trial counsel advised that the Petitioner's criminal history would hurt him during sentencing and that there was no guarantee the Petitioner would receive probation, though he acknowledged that was the Petitioner's hope. During these conversations, the Petitioner did not appear to be under the influence of any substance or have trouble understanding the charges he faced or the guilty plea agreement terms. The Petitioner asked trial counsel questions about the Day Reporting Center and the Samantha Monday program.

Trial counsel stated that he explained to the Petitioner that without accepting the guilty plea offer, the Petitioner was potentially a Range II offender, which would increase his potential sentencing range, and that he would additionally be prosecuted under Tennessee Code Annotated section 39-17-1324. The guilty plea offer included an effective ten-year sentence as a Range I offender at thirty percent, the opportunity to apply for probation and substance abuse treatment programs, and an agreement that the State would not pursue charges under Code section -1324. Trial counsel said that the State's agreement not to pursue this additional charge is what persuaded the Petitioner to accept the guilty plea offer.

Trial counsel said that the Petitioner refused to sign the guilty plea agreement on two occasions. During one of these occasions, the Petitioner was visibly upset and yelling but did not appear to be under the influence of narcotics. On the day of the guilty plea submission hearing, trial counsel reviewed the Petitioner's rights with the Petitioner, was in the courtroom when the trial court read the Petitioner's rights to him, and said that the Petitioner answered appropriately and did not appear to be under the influence of any substance.

Trial counsel denied having given the Petitioner narcotics. He explained that the Petitioner had worked as a manager at Big Kahuna Wings and had assisted trial counsel there a month prior to their meeting professionally in court. Trial counsel had informed the trial court prior to the Petitioner's guilty plea submission hearing that this interaction occurred, that the Petitioner had done a wonderful job, and that having a management job as a felon was impressive.

On March 30, 2023, the post-conviction court entered its order denying the petition for post-conviction relief. The post-conviction court accredited trial counsel's testimony. It found that the Petitioner had appropriately responded to the guilty plea colloquy, had denied being under the influence of any substance, and had indicated that he understood the proceedings. It further found that the Petitioner acknowledged that probation was not a guarantee. This timely appeal followed.

## II.    ANALYSIS

On appeal, the Petitioner contends that the post-conviction court erred by finding he entered his guilty plea agreement knowingly and voluntarily. Specifically, he argues that: (1) trial counsel was ineffective by failing to adequately explain that the Petitioner was not guaranteed to receive probation and substance abuse treatment as a part of the guilty plea

agreement and (2) he was under the influence of narcotics at the time of the guilty plea submission. The State responds that the post-conviction court did not err by finding that the Petitioner's guilty pleas were entered knowingly and voluntarily. We agree with the State.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The burden in a post-conviction proceeding is on the petitioner to prove allegations of fact by clear and convincing evidence. *Id.* § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "[Q]uestions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Id.* Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457.

## A.  Ineffective Assistance of Trial Counsel

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980); *Dellinger*, 279 S.W.3d at 293. When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," and reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to

reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. *Rhoden v. State*, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, in the context of a guilty plea the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). However, we note that a petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

> A petitioner's sworn responses to the litany of questions posed by the trial judge at the plea submission hearing represent more than lip service. Indeed, the petitioner's sworn statements and admission of guilt stand as a witness against the petitioner at the post-conviction hearing when the petitioner disavows those statements.

*Camacho v. State*, No. M2008-00410-CCA-R3-PC, 2009 WL 2567715, at *7 (Tenn. Crim. App. Aug. 18, 2009).

Here, trial counsel testified that he discussed the charges, potential sentences based on the Petitioner's criminal history, and the terms of the guilty plea offer with the Petitioner. He stated that the Petitioner participated in these discussions by asking questions about substance abuse treatment programs and by deciding to accept the guilty plea offer based on the State's not pursuing a Code section 39-17-1324 prosecution. Trial counsel stated he observed nothing to indicate the Petitioner did not understand the guilty plea agreement or that the Petitioner was under the influence of narcotics during their discussions or during the guilty plea submission hearing. The post-conviction court accredited trial counsel's testimony and found that the Petitioner affirmed under oath that his method and manner of service would be left to the discretion of the trial court. We

conclude that nothing in the record preponderates against the post-conviction court's findings. *Fields*, 40 S.W.3d at 456.

Furthermore, the Petitioner failed to present evidence other than his own testimony that trial counsel's actions affected his decision to plead guilty. Trial counsel negotiated a guilty plea agreement wherein the Petitioner avoided prosecution as a Range II offender, minimized his sentencing exposure, and avoided prosecution under Code section -1324. The Petitioner affirmed under oath that he understood his rights and those forfeited by pleading guilty. *Blackledge*, 431 U.S. at 74. Additionally, the Petitioner stated at the guilty plea submission hearing that he reviewed the Waiver of Trial by Jury and Request for Acceptance of Plea of Guilty form with trial counsel, understood its terms, and affirmed it was his signature on the form. The Petitioner also affirmed at the guilty plea submission hearing that he was satisfied with trial counsel's representation. The Petitioner has not established that there exists a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Paz v. State*, No. M2016-00069-CCA-R3-PC, 2017 WL 383492, at *4 (Tenn. Crim. App. Jan. 27, 2017) (holding that the petitioner failed to prove his guilty plea was entered unknowingly and involuntarily due to trial counsel's failure to explain its terms because the petitioner was made aware of the consequences of the plea agreement, affirmed his understanding, and avoided a potential life sentence through the negotiated plea).

As such, the Petitioner has failed to establish trial counsel's performance was deficient or that any resulting prejudice occurred. Therefore, he is not entitled to relief on this issue.

### B.     Validity of the Guilty Plea

A guilty plea must be knowing and voluntary to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977), *superseded on other grounds by* Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b*)*. Whether a guilty plea is voluntary and knowing requires an affirmative showing that the defendant has been made aware of the significant consequences of such a plea before it is accepted. *Boykin*, 395 U.S. at 242; *Mackey*, 553 S.W.2d at 340. A trial court must question the defendant to ensure the defendant fully understands the guilty plea agreement and its consequences. *Boykin*, 395 U.S. at 243-44; *Mackey*, 553 S.W.2d at 341; *see* Tenn. R. Crim. P. 11(b)(1).

Our supreme court has recognized that "the decision to plead guilty is often heavily influenced by the defendant's appraisal of the prosecution's case against him and the

likelihood of securing leniency through a plea bargain." *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Brown v. Perini*, 718 F.2d 784, 786 (6th Cir. 1983)). Factors used in determining whether a defendant's guilty plea was knowing and voluntary are as follows: (1) the defendant's relative intelligence; (2) the degree of the defendant's familiarity with criminal proceedings; (3) whether the defendant was represented by competent counsel and had the opportunity to confer with counsel about the available options; (4) the extent of advice from counsel and the trial court concerning the charges against the defendant; and (5) the defendant's reasons for deciding to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial. *Id*. Ignorance, misunderstanding, coercion, inducements, or threats render a plea involuntary. *Boykin*, 395 U.S. at 242-43.

Whether a guilty plea meets the constitutional standards of voluntary and knowing is a mixed question of law and fact. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Therefore, a reviewing court analyzes the post-conviction court's findings of fact de novo with a presumption of correctness and its findings of law purely de novo. *Id*. at 830-31.

In denying relief, the post-conviction court found that the Petitioner's guilty pleas were knowingly and voluntarily entered. Trial counsel testified that he explained the plea offer to the Petitioner, discussing each of the Petitioner's charges, the Petitioner's potential offender class, and potential punishments the Petitioner faced. While the Petitioner testified that he did not finish high school, could not read well, and had been in special education, trial counsel said the Petitioner appeared to understand their discussions and the proceedings during the guilty plea submission hearing. Trial counsel further stated he did not observe any behavior that indicated the Petitioner was under the influence of narcotics during their interactions. The post-conviction court accredited the testimony of trial counsel that the Petitioner understood the nature of the charges against him and the nature and consequences of his guilty pleas. We will not disturb the post-conviction court's creditability determinations on appeal. *See Fields*, 40 S.W.3d at 456. The post-conviction court further found that the Petitioner responded appropriately to the trial court's inquiry, denied while under oath of being under the influence of any substance, and affirmed that he understood the terms and conditions of the plea agreement.

The record supports the post-conviction's courts findings that the Petitioner's guilty pleas were knowingly and voluntarily made. The record reflects that the trial court made a thorough inquiry as to the voluntariness of the Petitioner's guilty pleas and the Petitioner affirmed under oath that he understood the guilty plea's terms and its consequences. The record further reflects that the Petitioner affirmed that he was on prescribed medication but stated that it did not affect his ability to understand the proceedings. Therefore, the mere

allegation that the Petitioner was under the influence of oxycodone and that his ability to understand his guilty pleas, by itself and unsupported by specifics, does not overcome the the "formidable barrier" created by the Petitioner's sworn statements at the guilty plea submission hearing. *Blackledge*, 431 U.S. at 73-74. We conclude that the post-conviction court properly determined that the Petitioner's guilty pleas were knowing and voluntary and that he is not entitled to relief.

### III.    CONCLUSION

In consideration of the foregoing and the record as a whole, we affirm the judgment of the post-conviction court.

_____
KYLE A. HIXSON, JUDGE